**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 04-243-01** |
| | : | |
| **v.** | : | |
| | : | |
| **RUFUS AVERY** | : | |

## MEMORANDUM OPINION

**Savage, J.**                                                                          **March 12, 2021**

Moving for a reduction of his sentence under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), Rufus Avery contends that the First Step Act's revision to the stacking penalties in 18 U.S.C. § 924(c) reducing the penalties for successive Section 924(c) offenses warrants a reduction of his sentence. Avery argues that the significant disparity between his sentence and the sentence he would receive today constitutes an extraordinary and compelling reason supporting compassionate release. He also contends that he is not a danger to the community and he has been committed to his rehabilitation in prison.

The government argues that a change in the law does not provide a ground for compassionate release, contending that § 403 of the First Step Act does not apply retroactively. It cites the provision stating that the change in the stacking penalties only applies to defendants sentenced after the statute's enactment. It argues that a district court has no authority to define what constitutes an extraordinary and compelling reason for compassionate release. It also contends that Avery is a danger to the community, citing the numerous robberies he committed leading to his incarceration. The government

1

argues alternatively that we should stay this matter pending the Third Circuit's decision in *United States v. Andrews*, No. 20-2768.[1]

In 2002 and 2003, Avery, then 22 years old, committed a series of robberies of several restaurants, grocery stores and other businesses. He entered a guilty plea to one count of conspiracy to interfere with interstate commerce by robbery, two counts of carrying a firearm during a crime of violence under Section 924(c) and twenty-eight counts of Hobbs Act robbery. Upon application of the stacking penalties under Section 924(c) in place at the time of his sentencing, Avery was sentenced to concurrent three-year terms on the multiple Hobbs Act robbery counts, a consecutive seven years on the first Section 924(c) count and a consecutive twenty-five years on the second Section 924(c) count. His total sentence was thirty-five years. His expected release date is August 13, 2033. Under the current Section 924(c) statutory scheme, he would receive a sentence of fourteen years plus three years on the robbery counts. He has already served seventeen years.

After considering the circumstances of the case, including the significant disparity between the sentence Avery received and the sentence he would receive if sentenced today in light of the First Step Act, we conclude that Avery has presented an extraordinary and compelling reason warranting a sentence reduction. We also find that he is not a danger to the community. Therefore, we shall grant his motion for a sentence reduction.

---

[1] The two issues in *Andrews* are whether district courts have the authority to identify other extraordinary and compelling reasons supporting a sentence reduction; and whether the First Step Act's change to the stacking penalties in Section 924(c) constitutes an extraordinary and compelling reason.

## The Compassionate Release Statute

### *The Historical Statutory Framework*

A court may reduce a defendant's sentence, after considering the factors set forth in 18 U.S.C. § 3553(a), if it first finds that extraordinary and compelling reasons warrant a reduction and "a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Before ordering the release of a prisoner, the court must determine that he is not a danger to the safety of others or the community. 18 U.S.C. § 3142(g).

Congress did not define what constitutes an extraordinary and compelling reason, leaving it to the Sentencing Commission to do so. In its policy statement and commentary addressing Section 3582(c)(1)(A), the Sentencing Commission set forth three specific extraordinary and compelling reasons. U.S.S.G. § 1B1.13, cmt. n. 1. Application Notes 1(A) through 1(C) detail qualifying medical, age and family circumstances.

Making it clear that these were not the only reasons that may be considered extraordinary and compelling, the Sentencing Commission added an "other reasons" category that provides a reduction may be warranted by an "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13, cmt. n. 1(D). At the same time, it delegated the Bureau of Prisons ("BOP") Director to define what other reasons qualified under subdivision 1(D). *Id.*

In exercising its delegated authority, the BOP issued Program Statement 5050.49 setting forth its criteria for compassionate release.[2] The Program Statement included

---

[2] U.S. Department of Justice, Federal Bureau of Prisons, Program Statement 5050.49 (Aug. 12, 2013), available at https://www.bop.gov/policy/progstat/5050_049_CN-1.pdf.

criteria for granting requests based on medical, age and family circumstances. It also listed factors to be considered for all requests.[3] After passage of the First Step Act (FSA), the BOP amended the Program Statement outlining the circumstances that it deemed may justify relief.[4] However, those circumstances were limited to the same bases identified by the Sentencing Commission – medical, age and family circumstances. Significantly, despite having been given the authority to do so, the BOP has not identified what other reasons may support compassionate release.

Until Congress amended the compassionate release statute in the FSA, the BOP had the exclusive authority to move for a sentence reduction.[5] With that authority came the sole responsibility for determining what reasons other than medical condition, age, and family circumstances qualified as extraordinary and compelling. If the BOP did not consider a defendant's reason extraordinary and compelling and did not file a motion, the defendant had no recourse to the courts.[6] Consequently, there was no way to discern

---

[3] *Id.* at 3-10. Similar to the Section 3553(a) factors, these factors include the nature and circumstances of the offense, the defendant's criminal history, comments from victims, unresolved detainers, supervised release violations, institutional adjustments, disciplinary infractions, the defendant's personal history derived from the Pre-Sentence Report, the length of the defendant's sentence and the amount of time served, the defendant's current age, the defendant's age at the time of the offense and sentencing, any release plans and whether release minimizes the severity of the offense. *Id.* at 10.

[4] U.S. Department of Justice, Federal Bureau of Prisons, Program Statement 5050.50 (Jan. 17, 2019), available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf. These changes include requiring inmates be informed of the availability and process for sentence reductions, modifications to the definition of "terminally ill," requiring notice and assistance for terminally ill inmates, requiring requests for terminally ill inmates be processed within fourteen days, requiring notice and assistance for debilitated offenders and specifying that inmates may file motions directly in court after exhausting administrative remedies or 30 days from the receipt of the request by the warden. *Id.* at 3.

[5] "How the First Step Act Changed Federal Compassionate Release," Compassionate Release: A Project by Brandon Sample, Attorney at Law (2020), https://compassionaterelease.com/first-step-act-compassionate-release/.

[6] *Id.*

what reason, other than the enumerated ones, constituted an extraordinary and compelling reason.

The process changed when Congress passed the FSA in December 2018. Congress displaced the BOP as the exclusive gatekeeper of motions for sentence reductions. Now, a defendant, after exhausting administrative remedies, may move for a reduction under 18 U.S.C. § 3582(c)(1)(A).

Congress changed the process in reaction to the BOP's inconsistent and infrequent use of the compassionate release mechanism. The BOP had filed few motions.[7] From 1984 to 2013, the BOP filed only approximately 24 motions annually.[8] From 2013 to 2017, of the 5,400 applications for compassionate release, the BOP approved only six percent.[9] During that period, 266 people who had requested compassionate release died while awaiting the BOP's determination to file motions on their behalf.[10] The Inspector General's report finding that the BOP rarely moved for compassionate release under its own policies led the Sentencing Commission to amend its policy to encourage the BOP to use the mechanism more frequently. *See* "§ 1B1.13 (Policy Statement) – Compassionate Release," U.S. Sentencing Commission (2016), https://www.ussc.gov/sites/default/files/elearning/2016-guideline-amendments/story content/external_files/Comp%20Release.pdf (announcing the broadening of eligibility

---

[7] *United States v. Redd*, 444 F. Supp. 3d 717, 725 (E.D. Va. 2020) ("The First Step Act was passed against the backdrop of documented infrequency with which the [BOP] filed motions for a sentence reduction on behalf of defendants.").

[8] *Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice)).

[9] "How the First Step Act Changed Federal Compassionate Release," *supra* note 5.

[10] *Id.*

criteria for compassionate release to expand the pool of candidates). A defendant himself may now move for a sentence reduction after exhausting administrative remedies. 18 U.S.C. § 3582(c)(1)(A).

To exhaust administrative remedies, a defendant must first present his request for compassionate release to the warden. After 30 days of submitting the request, the defendant may move for compassionate release in the district court if the warden has denied the request or has not acted. *Id.*; *United States v. Raia*, 954 F.3d 594, 595-96 (3d Cir. 2020).

Avery has properly exhausted administrative remedies. He filed a written request with the warden on May 27, 2020.[11] More than 30 days have passed since the warden received Avery's request. Therefore, we may now consider the motion.

The threshold issue is whether the change to the Section 924(c) stacking penalties is an extraordinary and compelling reason for reducing the defendant's sentence. Neither the Sentencing Commission nor the BOP has determined that it is. Indeed, as we previously noted, they have not identified any "other reasons" that qualify for a sentence reduction. Thus, the question is whether, absent such a determination, a court may decide what is an extraordinary and compelling reason for compassionate release.

The Third Circuit has not ruled on this issue.[12] The Second, Fourth, Sixth and Seventh Circuits have, holding that district courts have discretion to determine what constitutes an "extraordinary and compelling" reason justifying compassionate release. *U.S. v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020); *U.S. v. McCoy*, 981 F.3d 271, 281 (4th

---

[11] Def.'s Mot. for Sent. Red. Ex. A (ECF No. 116).

[12] It is pending appeal in *Andrews* and is scheduled for submission to the panel on March 16, 2021.

Cir. 2020); *U.S. v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020); *U.S. v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). They reason that until the Sentencing Commission updates the policy statements to reflect the FSA's changes, there is no applicable policy statement for prisoner-initiated motions for compassionate release. No circuit has held otherwise.

The Sentencing Commission, for lack of a quorum,[13] has not updated Sentencing Guideline Section 1B1.13, its commentary or application notes. The outdated guideline does not take into account that the BOP is no longer the gatekeeper to the courts and the sole determiner of what "other reasons" are extraordinary and compelling. The Sentencing Commission itself recognizes that its policy statement and commentary are outdated in light of the FSA's changes. *See* "Compassionate Release," *The First Step Act of 2018: One Year of Implementation*, United States Sentencing Commission, at 47 (August 2020), www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/ 2020/20200831_First-Step-Report.pdf. As the Commission acknowledges, "[t]he statutory changes made by the First Step Act did not make any changes to the Guidelines Manual, nor did the Act provide emergency amendment authority to the Commission. Thus, the policy statement at § 1B1.13 does not reflect the First Step Act's changes." *Id*.

It was not unreasonable for the Sentencing Commission to delegate the authority to the BOP to define what was an extraordinary and compelling reason to the BOP because it was the gatekeeper. The Commission had no need to issue a policy statement

---

[13] The Sentencing Commission is currently unable to update Section 1B1.13 or its commentary because it lacks the necessary quorum. "ESP Insider Express Special Edition: First Step Act," United States Sentencing Commission, Office of Education & Sentencing Practice at 5 (February 2019), https://www.ussc.gov/sites/default/files/pdf/training/newsletters/2019-special_FIRST-STEP-Act.pdf.

explicating other reasons for granting motions because courts had no real role in deciding what was a qualifying reason.

Now, the courts have the power to grant motions without the BOP's moving or approving them. To permit the BOP to define what reasons qualify for compassionate release would essentially give it a gatekeeping role, one that Congress took from it.

Given that the BOP is no longer the gatekeeper, it cannot set the policy for compassionate release. It makes no sense to have the BOP determine what is an extraordinary and compelling reason for reduction when it no longer exclusively controls the process. It cannot make the rules. The Sentencing Commission policy statement is premised on a process that Congress has replaced. The Commission, for reasons not of its making, has not issued a new policy statement taking into account the change to the process entrusting the courts with the power to grant sentence reductions upon a defendant's motion without the BOP's input.

The statute provides that a reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). There is no longer any policy statement that applies because Congress changed the process, significantly diminishing the role of the BOP in it. There is no reason for the Sentencing Commission, when it eventually has a quorum, to delegate authority to the BOP to decide what "other reasons" qualify as extraordinary and compelling.

Not to implement these changes now would frustrate the will of Congress, which intended that compassionate release be used more often and on a broader scope. *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194 (2018), entitled

"Increasing the Use and Transparency of Compassionate Release."[14] Legislative history supports this conclusion. Senator Cardin explained: "[T]he bill expands compassionate release under the Second Chance Act and expedites compassionate release applications." 164 Cong. Rec. 192, at S7314, 2018 WL 6350790 (Dec. 5, 2018). *See also* 164 Cong. Rec. 201, at H10362 (Dec. 20, 2018) (statement of Rep. Nadler) ("The prison reform provisions of this bill also include a number of very positive changes, such as . . . improving application of compassionate release").

To continue relying on BOP criteria and allowing the BOP to establish the grounds for a sentence reduction under Section 3582(c)(1)(A) would be inconsistent with the amended statute. It would allow the BOP to continue exercising a gatekeeping role by defining or limiting the grounds for compassionate release. Likewise, the Sentencing Commission's outdated guideline and commentary is inconsistent with the letter and the spirit of the current compassionate release statute.[15] On the other hand, a court determining what constitutes a qualifying extraordinary and compelling reason is not inconsistent with any policy statement issued by the Sentencing Commission. There is no applicable policy statement to the contrary. Thus, we conclude that a court has the authority and responsibility to determine what is an extraordinary and compelling reason for a sentence reduction under Section 3582(c)(1)(A).

---

[14] The title and preamble of an act can provide insight into its meaning. *See* A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* § 34, at 218 (2012) (Preambles "set forth the assumed facts and the purposes that the majority of the enacting legislature . . . had in mind, and these can shed light on the meaning of the operative provisions that follow"); *Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998) (quoting *Trainmen v. Baltimore & Ohio R. Co.*, 331 U.S. 519, 528–529 (1947)) ("We also note that 'the title of a statute and the heading of a section' are 'tools available for the resolution of a doubt' about the meaning of a statute."); *I.N.S. v. Nat'l Ctr. for Immigrants' Rights, Inc.*, 502 U.S. 183, 189 (1991) ("[T]he title of a statute or section can aid in resolving an ambiguity in the legislation's text.").

[15] The Guidelines Manual Commentary is authoritative unless it violates a federal statute or is inconsistent with the guideline. *United States v. Stinson*, 508 U.S. 36, 38 (1993).

### *Is Section 924(c)'s Stacking Amendment an*
### *Extraordinary and Compelling Reason?*

We now consider whether the disparate treatment of a defendant sentenced before and one sentenced after the FSA changed the Section 924(c) stacking penalties constitutes an extraordinary and compelling reason warranting a sentence reduction.

District courts are divided on the issue. Some have held they have no power to consider the question.[16] Some courts, including one circuit, have held that the FSA's change to the stacking provision alone is a ground to grant compassionate release. *See*, *e.g.*, *McCoy*, 981 F.3d at 286 ("[W]e find that the district courts permissibly treated as 'extraordinary and compelling reasons' for compassionate release the severity of the defendants' § 924(c) sentences and the extent of the disparity between the defendants' sentences and those provided for under the First Step Act.").[17] Others have concluded that the effect of the stacking change alone is not a sufficient basis for Section 3582 relief; but, in combination with other factors, it may be. *See*, *e.g.*, *United States v. Adeyemi*, 470 F. Supp. 3d 489, 518 (E.D. Pa. 2020) ("We may consider whether a change in sentencing law, particularly 'in combination with' other factors, constitutes an extraordinary and compelling reason for release.").[18]

---

[16] *See, e.g.*, *United States v. Lynn*, No. 89-72, 2019 WL 3805349, at *3-4 (S.D. Ala. Aug. 13, 2019); *United States v. Shields*, 2019 WL 2359231, at *4 (N.D. Cal. June 4, 2019); *United States v. Willingham*, 2019 WL 6733028, at *2 (S.D. Ga. 2019)).

[17] *See also United States v. McPherson*, 454 F. Supp. 3d 1049, 1053 (W.D. Wash. 2020) ("[Defendant's] sentence was 15 years beyond what is now deemed a fair penalty by our law, and he has already served 26 years of that now clearly unfair sentence. It is extraordinary that a civilized society can allow this to happen to someone who, by all accounts, has long since learned his lesson."); *Redd*, 444 F. Supp. 3d at 727; *United States v. Haynes*, 456 F. Supp. 3d 496, 516 (E.D.N.Y. 2020). *See also Brooker*, 976 F.3d at 238 ("[T]he sentencing court's statements about the injustice of [the defendant's] lengthy sentence might perhaps weigh in favor of a sentence reduction.").

[18] *See also United States v. Pollard*, No. 10-633-1, 2020 WL 4674126, at *7 (E.D. Pa. Aug. 12, 2020) (holding "the dramatic difference in the sentence Pollard would face if charged today" under Section 924(c), his lack of criminal history and evidence of rehabilitation warrant a sentence reduction) (citations

We hold that when taken into consideration with the Section 3553(a) factors in the particular case, the disparity in sentences resulting from the FSA's amendment of the Section 924(c) stacking provision alone may constitute an extraordinary and compelling reason under Section 3582. We also conclude that a condition, such as health, age or family circumstances, which itself does not rise to the level of extraordinary and compelling, when considered in combination with the disparity between the sentence the defendant received and the sentence he would have received under the FSA, may warrant a sentence reduction.

The Sentencing Commission was created to provide, among other goals, fairness in sentencing and to avoid "unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct . . . ." 28 U.S.C. § 991(b)(1)(B). *See also Koon v. United States*, 518 U.S. 81, 113 (1996). The Section 3582 compassionate release procedure and safeguards can achieve these goals, especially given the Sentencing Commission's inability to act.

Avery was sentenced under a statutory scheme that Congress has since found to be too severe and punitive. In the House, Representative Nadler stated the FSA stops "the unfair 'stacking' of mandatory sentencing enhancements for certain repeat firearms offenders. Although we must do far more to address the injustice of mandatory minimum sentences and other policies that lead to mass incarceration, these changes recognize the fundamental unfairness of a system that imposes lengthy imprisonment that is not

---

omitted); *United States v. Harris*, No. 97-399-1, 2020 WL 7861325, at *12 (E.D. Pa. Dec. 31, 2020) ("[W]hile the First Step Act's change to section 924(c) does not constitute an extraordinary and compelling reason on its own, Congress did not intend to categorically preclude courts from considering sentencing disparities created by the amendment to section 924(c) altogether"); *United States v. Marks*, 455 F. Supp. 3d 17, 36 (W.D.N.Y. Apr. 20, 2020) (considering the First Step Act's changes in sentencing laws in combination with the defendant's rehabilitation as extraordinary and compelling reasons).

based on the facts and circumstances of each offender and each case." 164 Cong. Rec. 201, at H10362 (Dec. 20, 2018). In the Senate, Senator Cardin explained the First Step Act "eliminates the so-called stacking provision in the U.S. Code, which helps ensure that sentencing enhancements for repeat offenses apply only to true repeat offenders. The legislation clarifies that sentencing enhancements cannot unfairly be 'stacked,' for example, by applying to conduct within the same indictment." 164 Cong. Rec. 200, at S7314. Senator Wyden described the FSA as "a groundbreaking step toward long overdue criminal justice reform in our country. Too many people have unnecessarily spent decades behind bars for nonviolent offenses or because of disproportionately harsh mandatory minimum sentences." 164 Cong. Rec. 200, at S7917 (Dec. 19, 2018). Furthermore, when Congress passed the original compassionate release statute in 1984, it explicitly contemplated that changes to sentencing laws may be appropriate to consider for a sentence reduction:

> The Committee believes that there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances. These would include . . . cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence, and some cases in which the sentencing guidelines for the offense of which the defender was convicted have been later amended to provide a shorter term of imprisonment.

S. Rep. 98-225, 55-56, 1984 U.S.C.C.A.N. 3182, 3238-39 (Aug. 4, 1983).

A defendant sentenced today for the same number of Section 924(c) offenses could be released before a defendant sentenced ten or fifteen years ago. *See* "Limiting Section 924(c) 'Stacking,'" *The First Step Act of 2018: One Year of Implementation*, United States Sentencing Commission, at 34 (August 2020), www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/

2020/20200831_First-Step-Report.pdf. For example, a defendant sentenced in 2011 to two counts under Section 924(c) would receive a minimum sentence of 30 years imprisonment. *Id.* He would not be released until 2041. A defendant sentenced today on the same counts would receive a minimum of 10 years imprisonment. *Id.* He would be released in 2031. Not only would the defendant sentenced today receive 20 years less than the defendant sentenced pre-FSA, he would be released ten years sooner.

No one can dispute that such a result is absurd. Congress could hardly have intended such a result. *See Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 539 F.2d 199, 210 (3d Cir. 2008) (quoting *Public Citizen v. U.S. Dept. of Justice*, 491 U.S. 440, 454 (1989)) (when interpreting a statute, courts must "avoid constructions that produce odd or absurd results or that are inconsistent with common sense.") (internal quotations omitted). *See also* 2A N. Singer, Sutherland Statutes and Statutory Construction § 45:12, at 92 (6th ed. 2000).

At the same time that the FSA significantly lowered the Section 924(c) stacking penalties, it did not make the change retroactive. Of course, one could argue that had Congress wanted the amendment to be applied retroactively, it would have explicitly done so. However, there is a reasonable explanation why it did not. It intended that in each case, the courts should determine whether an individual defendant was entitled to the benefit of the new sentencing scheme.

Congress chose not to implement a categorical approach automatically granting a reduction for defendants sentenced prior to the FSA. Had it done so, there would have been no Section 3553(a) and "danger to the community" analyses to determine whether the defendant merited a sentence reduction and would not endanger the safety of the

community. Defendants would have been released without any vetting. Congress was aware of the compassionate release statute when it declined to adopt the change to Section 924(c) retroactively. Mindful that the compassionate release statute provided for such an individual assessment, it left it to the courts to determine on a case-by-case basis whether a reduction based in part on the sentence disparity created by the FSA is justified. *See Erlenbaugh v. United States*, 409 U.S. 239, 244 (1972) ("[T]he principle that individual sections of a single statute should be construed together . . . necessarily assumes that whenever Congress passes a new statute, it acts aware of all previous statutes on the same subject") (citations omitted); *United States v. Ressam*, 553 U.S. 272, 274 (2008) (reading § 844(h) in conjunction with § 924(c) to conclude the word "during" denotes a temporal link between the carrying of explosives and the commission of a felony); *United States v. Stokes*, 858 F. Supp. 434, 443 (D.N.J. 1994) ("Congress is presumed to have known of the existence and scope of [pre-FSA] section 924(c)" and its interaction with the new carjacking offense enacted in section 2119, which falls "squarely within [its] definition of a violent crime");  Antonin Scalia & Brian A. Garner, *Reading Law: The Interpretation of Legal Texts* (2012) ("[L]aws dealing with the same subject—being *in pari materia* (translated as 'in a like manner')—should if possible be interpreted harmoniously").

Informed by the principles of absurdity and *in pari materia*, we conclude that a district court can grant a sentence reduction based on a sentence disparity in an appropriate case.

Avery was sentenced to a total term of 420 months' imprisonment. His sentence was driven by the stacking of Section 924(c) convictions. When Avery was sentenced in

2008, the statutory minimums were seven years on the first Section 924(c) count for brandishing a firearm in furtherance of a crime of violence and a consecutive twenty-five years on the second Section 924(c) count, for a mandatory minimum sentence of 32 years.

If Avery were sentenced today, his sentence on the Section 924(c) counts would be fourteen years. In the FSA, Congress amended Section 924(c), providing that the twenty-five year consecutive sentence applied only if the defendant had a prior Section 924(c) conviction before he committed the Section 924(c) offense for which he was sentenced. In other words, Section 924(c)'s consecutive penalty no longer applies to multiple charges in the same case. First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5222, § 403. Though Avery would still receive seven years for the first Section 924(c) count, he would no longer be subject to the mandatory twenty-five-year consecutive sentence for the second Section 924(c) count. Rather, he would receive another seven-year consecutive sentence for the second Section 924(c) count, for a total of fourteen years on the Section 924(c) counts. This significant sentence disparity of eighteen years constitutes an extraordinary and compelling reason in this case.

*Danger to the Community*

Not every defendant who presents a qualifying extraordinary and compelling reason is entitled to relief under Section 3582(c)(1)(A). The Section 3553(a) factors may militate against a sentence reduction. Likewise, a Section 3142(g) finding that the defendant may present "a danger to any other person or to the community" precludes a sentence reduction. U.S.S.G. § 1B1.13(2).

Before granting a motion for compassionate release based on an extraordinary and compelling reason, a court must find that the defendant "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.* § 1B1.13(2). The applicable Section 3142(g) factors include "the nature and circumstances of the offense charged," "the history and characteristics of the person," including "the person's character, physical and mental condition, family ties, . . . community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

The government argues that Avery presents a danger to the community due to the nature and extent of his offenses.[19] The government emphasizes that Avery engaged in a nine-month robbery spree with a firearm, robbing over a hundred people at gunpoint at thirty-four businesses.[20] It also points to Avery's conduct after his arrest. Though Avery cooperated with law enforcement, he later pretended to be mentally ill or incompetent to avoid testifying and attempted to obstruct justice by telling a co-defendant not to cooperate.[21]

Avery admitted his conduct and pled guilty.[22] He expressed remorse and accepted full responsibility for his actions. He struggled with substance abuse. He cooperated with the government immediately after his arrest, providing information about his conspirators

---

[19] Govt.'s Resp. at 5-6 (ECF No. 119).

[20] *Id.* at 1-2.

[21] *Id.* at 3.

[22] Def.'s Mot. for Sent. Red. at 3; Govt.'s Resp. at 3.

that was not previously known to the government.[23] Though he carried and brandished a gun during the commission of the robberies, no one was injured. He had no prior criminal history. Notably, during his incarceration, Avery has not received a disciplinary infraction since 2008.[24]

We find that Avery does not present a danger to others or the community.

*Section 3553(a) Factors*

Section 3582(c)(1)(A) requires a court to consider whether a sentence reduction is warranted under the factors detailed in 18 U.S.C. § 3553(a) before granting a sentence reduction. Section 3553(a) instructs district courts to "impose a sentence 'sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Kimbrough v. United States*, 552 U.S. 85, 101 (2007) (quoting 18 U.S.C. § 3553(a)). Similar to the Section 3142(g) factors, the applicable Section 3553(a) factors include: (1) the nature and circumstances of the offense, and the defendant's history and characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide punishment, deter criminal conduct and protect the public from further crimes by the defendant; (3) the kinds of sentences and sentencing ranges available; and (4) the need to avoid unwarranted sentence disparities among defendants committing similar offenses. 18 U.S.C. § 3553(a).[25]

---

[23] Def.'s Mot. for Sent. Red. at 3; Govt.'s Resp. at 3.

[24] Def.'s Mot. for Sent. Red. at Ex. B.

[25] Because Section 3553(a) establishes factors for courts to consider when initially imposing a sentence, not every factor listed applies to the compassionate release context. *Rodriguez*, 451 F. Supp. 3d at 406.

Avery has already served seventeen years. He will serve five years of supervised release under stringent conditions. As a convicted felon, he will face numerous collateral consequences after release.[26] Thus, a reduced prison sentence will provide punishment and deter future criminal conduct, and will not diminish the seriousness of his offense and respect for the law.

Avery has been incarcerated for most of his adult life. While in prison, he has missed the growth of his four children and the birth of his grandchild.[27] He has made efforts to better himself in prison, including taking over 50 continuing education and vocational classes, and accumulating over 90 college credit hours.[28] He has become a certified horticulture professional through a vocational program, scoring highly enough on the final exam to qualify him as an instructor.[29] He has maintained employment for nearly the entire term of his imprisonment, including working for UNICOR for 10 years and serving as a fitness instructor and the head clerk of the recreation department.[30] He has satisfied all court-imposed fines through his consistent employment.[31]

*Rehabilitation*

What has happened since a defendant was sentenced is relevant. It presents the most up-to-date information and amplifies or supplements the history and characteristics

---

[26] Collateral Consequences of Conviction Project, American Bar Association, https://www.americanbar.org/groups/criminal_justice/niccc/ (cataloging "over 45,000 federal and state statutes and regulations that impose collateral consequences on persons convicted of crimes").

[27] Def.'s Mot. for Sent. Red. at 16.

[28] *Id.* at Ex. C.

[29] *Id.* at Ex. D, E.

[30] *Id.* at Ex. F.

[31] *Id.* at Ex. G.

of the defendant. It informs the assessment of whether the defendant is deserving of any or no reduction in his sentence. It also provides insight into whether the defendant has been rehabilitated – an insight the sentencing court did not have. Indeed, evidence of post-sentencing rehabilitation is "highly relevant" to the Section 3553(a) factors. *Pepper v. United States*, 562 U.S. 476, 491 (2011). Hence, even though rehabilitation alone is not a ground for release or a sentence reduction under Section 3582(c)(1)(A), *see* 28 U.S.C. § 994(t), it is a relevant factor bearing on the analysis.

During his seventeen years in prison, Avery's conduct and amenability to rehabilitation have been revealed to prison authorities. Ironically, on consideration of a motion under Section 3582, a court is in a better position to assess Avery's potential for rehabilitation than the sentencing court was seventeen years ago. Thus, we shall consider the defendant's rehabilitation together with other factors in the extraordinary and compelling analysis, the danger to the community assessment, and the Section 3553(a) factors.

Although we pause to reduce his sentence in light of the nature and extent of his offenses, we are satisfied his remarkable rehabilitation overcomes his past. Avery has demonstrated a commitment to his rehabilitation in prison. As we have discussed, he has utilized his incarceration to enroll in classes on parenting, creative writing, finance, fitness and other subjects. He instructs others in horticulture and fitness. He has had no disciplinary incidents in the last thirteen years. Avery's efforts towards self-improvement and his achievements during his seventeen years in prison favor a sentence reduction.

**Conclusion**

We conclude that the substantial disparity in Avery's sentence resulting from the FSA amendment constitutes an extraordinary and compelling reason warranting a sentence reduction under Section 3582. We find Avery is not a danger to the community, and the Section 3553(a) factors support compassionate release. Therefore, we shall grant Avery's motion for a sentence reduction.